UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-22209-CIV-GAYLES

MICHAEL VAZQUEZ, et al.,

    Plaintiffs,

v.

GENERAL MOTORS, LLC,

    Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant General Motors LLC's Motion to Dismiss Plaintiff's Class Action Complaint [ECF No. 19] ("Motion"). The Court has reviewed the submissions of the parties and the applicable law and is otherwise fully advised. For the reasons that follow, the Motion is granted in part and denied in part.

**I.    BACKGROUND**

Plaintiffs Michael Vazquez and Michael Malone ("Plaintiffs"), both seeking to represent a class of Florida purchasers of Defendant General Motors LLC's (GM) Corvette Z06, are "track enthusiasts." Each purchased his Z06 for use both on public roads and on specialized closed tracks. Plaintiffs allege that GM marketed and sold the Z06 for use on race tracks—as evidenced by GM's information kits and brochures, the car's track-focused features, owner's manuals for the vehicle, press kits, and GM-sponsored track events—and that Plaintiffs relied on this marketing in deciding to purchase their vehicles. The 2015 vehicle information kit, for instance, described the benefits of a particular optional package as "faster lap times," including "[q]uarter-mile times of 10.95 seconds at 127 mph with the eight-speed and 11.2 seconds at 127 mph with the seven-speed transmission." Compl. ¶ 50. The 2015 product information brochure noted that

1

the Z06 was "developed to push the envelope of performance on the street and the track." *Id.* ¶ 51. The brochure likewise lauded the increased cooling components on the car, representations that Plaintiffs allege were intended to assure consumers that the Z06 could handle high temperatures. *Id.* ¶ 53. Numerous promotional materials described the vehicle as "track-proven" or "race-proven." *Id.* ¶¶ 50, 54. Consonant with those marketing materials, the Z06 was equipped with features one might expect in a car designed for track racing, including a specific "Track App" software component. *Id.* ¶¶ 55–56. And its 2015 and 2016 owner's manuals contemplated track use, offering detailed instructions on track driving. *Id.* ¶¶ 57–58. Meanwhile, press kits and GM-sponsored track events further indicated that the car was intended for use on race tracks. *Id.* ¶¶ 59–61.

According to the Complaint, the Z06, a car marketed and sold for both everyday use and for the race track, has a significant flaw: a design defect[1] makes it unsuitable for track driving. Plaintiffs allege that due to a defective cooling system, "the engine will overheat if it operates on the track during a typical track session, which causes the Z06 to go into Limp Mode to prevent permanent damage, or causes the driver to see the overheat gauge and pit the car before it goes into Limp Mode."[2] *Id.* ¶ 63. When the car enters Limp Mode, it automatically slows. Plaintiffs argue that it is inherently dangerous for the vehicle to enter Limp Mode either at the track or on public roads because sudden deceleration of a vehicle increases the risk of collision. *Id.* ¶¶ 63,

---

[1] Plaintiffs indicate that the Z06 has both design and "manufacturing defects." *See, e.g.*, Compl. ¶ 64. Looking behind the labels Plaintiffs assign, however, the Court sees allegations only of design defects—that is, Plaintiffs do not allege that errors in the manufacturing process rendered particular vehicles out of conformity with their intended design. The Court's reading of the Complaint is confirmed by Plaintiffs' Opposition to General Motors LLC's Motion to Dismiss Plaintiffs' Class Action Complaint [ECF No. 32], which notes that "Plaintiffs allege that GM breached its express warranty because the 'Z06s share a common design defect in that the system fails to operate as represented by GM' . . . [a]nd a plain reading of the GM Warranty demonstrates that it covers all vehicle defects, including design defects." [ECF No. 32]; Compl. ¶ 106.

[2] The Court notes that although Defendant's Motion to Dismiss characterizes Plaintiffs' allegations as overheating when driven aggressively in high ambient temperatures, the Court cannot find this limitation in the Complaint. While some of the forum posts Plaintiffs cite discuss high ambient temperatures, others do not, and Plaintiffs do not directly limit their facts or allegations in this way.

65–66. And the unexpected overheating can damage other components of the car as well. *Id.* ¶ 64.

According to Plaintiffs, GM knew of the defect but continued to market the cars for track driving. Plaintiffs allege that GM had conducted extensive track testing of the vehicle, which would have revealed the alleged defect. *Id.* ¶ 70. Likewise, Plaintiffs offer examples of online consumer complaints regarding the overheating issue and allege that GM monitors the online forums on which these complaints were lodged. *Id.* ¶¶ 75–82. Plaintiffs assert that a February 2015 statement by Corvette's chief engineer, Tadge Juechter, providing advice for how to avoid overheating while driving on tracks, demonstrated the company's awareness of the problem. *Id.* ¶ 74. Similarly, Plaintiffs allege that GM effectively admitted to the defect when it stopped production of the Z06 in 2016 due to the overheating issue and modified the cooling system in the 2017 model. *Id.* ¶ 71.

Plaintiffs' vehicles are covered by GM's express limited warranty, which in relevant part provides:

> The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new, remanufactured, or refurbished parts.

*Id.* ¶ 85. Plaintiffs assert that this warranty covers both manufacturing and design defects, but that GM has refused to repair the alleged design defect in their vehicles. *Id.* ¶ 87.

In June 2017, six named plaintiffs covering five states filed the instant Class Action Complaint [ECF No. 1], seeking to represent a nationwide class and numerous statewide classes of purchasers of the Z06. After Defendant filed its Motion, Plaintiffs voluntarily dismissed all non-Florida plaintiffs and their claims, leaving two named plaintiffs and five remaining claims: (1) violation of the Magnuson–Moss Warranty Act (15 U.S.C. § 2301 *et seq.*); (2) violation of

Florida's Unfair and Deceptive Trade Practices Act (Fla. Stat. § 501.201 *et seq.*); (3) fraudulent concealment (based on Florida law); (4) breach of express warranty (Fla. Stat. § 672.313); and (5) unjust enrichment (based on Florida law). [*See* ECF No. 30]. In the instant Motion, GM seeks Rule 12(b)(6) dismissal of all five remaining claims in the Complaint for failure to state a claim.

## II. LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## III. DISCUSSION

The five remaining counts of the Complaint fall into two major categories: warranty claims and fraud claims. And as an alternative to the contract-based warranty claims, Plaintiffs

bring a claim for unjust enrichment. The Court will take each claim in turn.

**A.      Warranty Claims**

   *1.      Breach of Express Warranty in Violation of Florida Statute § 672.313 (Count 4)*

Plaintiffs' central warranty claim is that GM's failure to remedy the vehicle's defects constitutes breach of the express limited warranty.[3] As set forth above, GM's limited warranty reads in relevant part:

> The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new, remanufactured, or refurbished parts.

GM argues that the limited warranty covers only manufacturing defects. "Materials or workmanship" is a specialized phrase that refers particularly to manufacturing defects.[4] GM asks the Court to read that phrase in the warranty to modify "any vehicle defect." Under GM's reading, the warranty covers "any vehicle defect . . . due to materials or workmanship"—i.e., manufacturing defects—but excludes "slight noise, vibrations, or other normal characteristics of the vehicle." In response, Plaintiffs argue that because there is no comma preceding "due to materials or workmanship," the phrase modifies the exclusions rather than the defects covered.

---

[3]   Although GM's Motion argues both that its limited warranty does not cover design defects and alternatively that its marketing does not create an express warranty, Plaintiffs argue their Florida warranty claim only on the basis of the express limited warranty, and not on a theory incorporating GM's marketing. Compl. ¶¶ 152–70. Thus, the Court will limit its analysis of the warranty claim to the limited warranty.

[4]   Although Florida courts have not directly defined the terms, numerous authorities outside of Florida recognize that "materials and workmanship" is a specialized warranty term meaning manufacturing defects. *See Blue Martin Const., Inc. v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013) ("While no Indiana court has defined the terms 'defects in material or workmanship' or 'design defect,' case law from outside Indiana reflects an understanding that defects in material and workmanship refer to departures from a product's intended design while design defects refer to the inadequacy of the design itself. . . . [W]here a product is manufactured correctly but designed inappropriately, the defect is one of design and not 'material or workmanship.'"); *Rice v. Sunbeam Prods., Inc.*, No. 12-cv-7923, 2013 WL 146270, *12 (C.D. Cal.) ("[T]he phrase 'free from defects in material and workmanship' in defendant's limited warranty refers only to manufacturing defects, not design defects."). Further, in their response to the Motion, Plaintiffs do not dispute that the phrase "materials and workmanship" describes exclusively manufacturing defects, but instead argue only that the phrase does not grammatically modify "any vehicle defect."

5

Under Plaintiffs' reading, the warranty covers "any vehicle defect"—encompassing both manufacturing and design defects—but exempts "slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship."

Courts generally are not permitted to engage in contract interpretation at the motion to dismiss stage. *See Managed Care Solutions, Inc. v. Cmty. Health Sys., Inc.*, No. 10-60170, 2011 WL 6024572, at *8 (S.D. Fla. Dec. 2, 2011). "However, where the contract . . . terms are unambiguous, a court may properly consider a motion to dismiss for failure to state a claim for breach." *Success Healthcare, LLC v. Zurich Am. Ins. Co.*, 9:14-81423-CIV, 2015 WL 11439019, at *3 (S.D. Fla. Mar. 20, 2015) (quoting *Alhassid v. Bank of Am., N.A.*, 2014 WL 6480656, at *6 (S.D. Fla. Nov. 17, 2014)); *see also Sarria Holdings, Inc. v. Walgreen Co.*, 2003 WL 1528711, at *2 (S.D. Fla. Jan. 31, 2003) ("[T]his court can look to the contract itself and determine if it speaks to the issues in dispute. If the contract covers plaintiff's claims in clear and unambiguous language, then plaintiff's ability to state a claim upon which relief may be granted, thus surviving this motion to dismiss, depends on the specific terms of the contract, which the court analyzes as a matter of law.").

The Court finds sufficient ambiguity in the warranty language to make dismissal of the claims at this stage premature. While there is some support for GM's proposed interpretation,[5] the warranty provision is not devoid of ambiguity. Accordingly, the Motion is denied as to Count 4.

---

[5] The Court notes a number of shortcomings in Plaintiffs' reading of the warranty language. First, Plaintiffs have offered inconsistent interpretations to the Court. Plaintiffs' own Complaint defines GM's warranty obligations as limited to defects in materials and workmanship. Compl. ¶ 160 ("GM breached the Limited Warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by GM as GM has been unable to repair or adjust the Z06's materials and workmanship defects."). Second, Plaintiffs' premise that the lack of a comma is dispositive of the meaning is belied by the subsequent clause—"occurring during the warranty period." Under Plaintiffs' interpretive rule, that phrase too would modify only the exclusions, so that the warranty would cover all vehicle defects, whether or not they occur in the warranty period. That cannot be correct.

6

2. *Violation of Magnuson–Moss Warranty Act (15 U.S.C. § 2301 et seq.) (Count 1)*

"Congress enacted the Magnuson–Moss Warranty Act 'to improve the adequacy of information available to consumers, prevent deception, and [to] improve competition in the marketing of consumer products.'" *Cunningham v. Fleetwood Homes of Ga., Inc.*, 253 F.3d 611, 617 (11th Cir. 2001) (quoting 15 U.S.C. § 2302). State law governs claims brought pursuant to Magnuson–Moss. That is, "claims under the Magnuson–Moss Act stand or fall with [a plaintiff's] express and implied warranty claims under state law." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *see also Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1231 (11th Cir. 2016) ("The claims under the Magnuson–Moss Act are identical to the other warranty claims because they are also based on state law."); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986) ("[E]xcept in the specific instances in which Magnuson–Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law.").

Here, Plaintiffs' Magnuson–Moss claim is premised on the express written limited warranty. The parties agree that the Magnuson–Moss claim is substantively identical to the Florida state law warranty claim. Because the Court has determined that it cannot dismiss Plaintiffs' state law claim for breach of express warranty, the Court likewise declines to dismiss Plaintiffs' Magnuson–Moss claim.[6] Accordingly, the Motion is denied as to Count 1.

**B.    Fraud Claims**

1.    *Fraudulent Concealment (Count 3)*

GM moves to dismiss Plaintiffs' fraudulent concealment claim on the grounds that (1)

---

[6] Additionally, GM argues that Plaintiffs have failed to satisfy the statutory prerequisite—one-hundred named plaintiffs—necessary for a class-wide claim under Magnuson–Moss. In their Response, Plaintiffs argue that the statutory prerequisite is no bar to class-wide relief where, as here, the Court has jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). In its Reply, GM does not respond to this argument. The Court agrees with Plaintiffs that their Magnuson–Moss claim may proceed on a class-wide basis.

7

Plaintiffs fail to plead the claim with the specificity required by Rule 9(b); (2) Plaintiffs do not allege a duty to disclose; and (3) Florida's economic loss rule bars the claim. Because the Court finds that the claim is barred by the economic loss rule, it declines to reach the other grounds for dismissal.

"Simply put, the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n v. Marsh & McLennan Co.*, 110 So. 3d 399, 401 (Fla. 2013). The doctrine preserves "the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." *Id.* (quoting *Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. 1993)). It recognizes that "[w]hen the parties are in [contractual] privity, contract principles are generally more appropriate for determining remedies for consequential damages that the parties have, or could have, addressed through their contractual agreement." *Id.* at 402.

In *Tiara*, the Florida Supreme Court addressed what it saw as the "unprincipled expansion of the rule" and held that "the economic loss rule applies only in the products liability context." *Id.* at 407. Although *Tiara* sought to cabin and clarify the economic loss doctrine, one sentence in the Florida Supreme Court's opinion has vexed litigants and forms the basis of the parties' dispute over the claim here. The court wrote that "despite the general prohibition against a recovery in tort for economic damages for parties in privity of contract, we have allowed it in torts committed independently of the contract breach, such as fraud in the inducement." *Id.* at 402. Plaintiffs hang their hat on this one sentence and on one California district court opinion interpreting this sentence to allow a fraud claim for an automobile defect to proceed. *See In re*

8

*MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014). Defendant, meanwhile, points to numerous orders of courts in this district finding the precise opposite—that the sentence quoted by Plaintiffs is mere dicta and Plaintiffs' preferred reading, a misinterpretation of that dicta. *See In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324 (S.D. Fla. 2016); *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331 (S.D. Fla. 2013); *W.W. Sports Importadora Exportadora e Comerical Ltda v. BPI Sports, LLC*, 16-cv-60147, 2016 WL 9375202 (S.D. Fla. Aug. 11, 2016); *Burns v. Winnebago Indus., Inc.*, 13-cv-1427, 2013 WL 4437246, at *4 (M.D. Fla. Aug. 16, 2013).

The Court agrees with Defendant and with the other courts in this Circuit that have addressed the issue: "Florida's Supreme Court did not intend to allow such products liability claims to survive." *In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d at 1339. Indeed, as the *Burns* court explained, allowing such claims to proceed would undermine the economic loss rule altogether. *Burns*, 2013 WL 4437246, at *4 ("To hold otherwise would allow the economic loss rule to be manipulated such that any time a purchaser received a defective product that did not cause any injuries or damage to other property, such a purchaser could assert claims for negligent and fraudulent concealment regarding the defect to avoid the economic loss rule.").

The parties agree that Plaintiffs' damages are purely economic. Fraudulent concealment claims in the products liability sphere that seek to recover only economic damages are clearly barred by Florida's economic loss rule. Accordingly, the Motion is granted as to Count 3.

    2.    *Violation of the Florida Unfair & Deceptive Trade Practices Act (Fla. Stat. § 501.201 et seq.) (Count 2)*

GM moves to dismiss Plaintiffs' claim under Florida's Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"), arguing that (1) Plaintiffs fail to plead their FDUTPA claim with the specificity required by Rule 9(b) of the Federal Rules of Civil

Procedure; and (2) Plaintiffs fail to allege causation, an element of a prima facie FDUTPA claim.

FDUTPA forbids "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 501.204. "The elements comprising a consumer claim for damages under FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (citing *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). To determine whether an act is deceptive or unfair, Florida law employs an objective test: whether "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances," rather than "actual reliance on the representation or omission at issue." *Id.* at 983–84 (first quoting *State v. Commerce Comm. Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007); then quoting *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. 1st DCA 2000)).

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see, e.g., Inman v. Am. Paramount Fin.*, 517 F. App'x 744, 748 (11th Cir. 2013). The particularity rule alerts "defendants to the 'precise misconduct with which they are charged' and protect[s] defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). "The application of the rule, however, must not abrogate the concept of notice pleading." *Id.* Rule 9(b) is satisfied if the complaint states:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each

such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation marks omitted).

As an initial matter, the Court agrees with Defendant that Rule 9(b) is the operative pleading standard for a FDUTPA claim that, as here, sounds in fraud. *See State Farm Mutual Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 17-cv-20028, 2017 WL 4270620, *15 (S.D. Fla. 2017) ("Federal district courts have split as to whether FDUTPA claims are subject to Rule 9(b). . . . However, where the gravamen of the claim sounds in fraud, as here, the heightened pleading standard of Rule 9(b) applies."). The question then is whether the Complaint satisfies Rule 9(b). The Court believes that it does. As described above, Plaintiffs allege numerous specific representations, the precise marketing materials in which those representations were contained, and the manner in which the representations allegedly misled Plaintiffs and similarly situated consumers. Plaintiffs have offered GM sufficiently detailed notice of the precise misconduct Plaintiffs allege, including the what, when, where, and how of the alleged deceptive conduct. This is all that Rule 9(b) requires.

Defendant further argues that Plaintiffs fail to plead causation because they fail to allege that they actually saw the allegedly deceptive advertisements and that seeing the advertisements caused them to purchase their vehicles. In other words, Defendant objects that Plaintiffs have not alleged actual reliance. Defendant misunderstands the FDUTPA standard, which requires only an objective inquiry. *See Carriuolo*, 823 F.3d at 985–86 ("General Motors is incorrect to suggest that the plaintiffs must prove that every class member saw the sticker and was subjectively deceived by it. As the district court correctly observed, these arguments

simply seek a reliance inquiry by another name. Instead, under FDUTPA, the plaintiff must only establish three *objective* elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." (citations omitted) (emphasis in original)).

Plaintiffs have adequately pled a prima facie case under FDUTPA. Accordingly, the Motion is denied as to Count 2.

**C.  Unjust Enrichment (Count 5)**

Finally, GM argues that Plaintiffs' unjust enrichment claim should be dismissed because (1) such a claim cannot be brought where an express contract governs the subject matter of the dispute; and (2) Plaintiffs have not alleged that no adequate legal remedy exists.

"The essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009). "It is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy." *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005). Thus, "[n]o cause of action in unjust enrichment can exist where the parties' relationship is governed by an express contract." *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010); *Rivera v. Ford Motor Co.*, 16-cv-13786, 2017 WL 3485815, at *6–7 (E.D. Mich. 2017) (analyzing unjust enrichment claim under Florida law) ("Because the express warranty governs the claims at issue, [Plaintiff]'s unjust enrichment claim fails.").

Here, the parties agree that "an unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence of an express contract governing the

subject of the dispute." *Id.* (quoting *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337–38 (S.D. Fla. 2002)). Plaintiffs argue that in refusing to recognize that the warranty covers design defects, GM is contesting the existence of an express contract governing the subject of the dispute. The Court sees just the opposite: GM argues that an express contract governs and that because the contract has not been breached, Plaintiffs are not entitled to recover.

Because there is an express warranty governing the subject matter at issue here, Plaintiffs' unjust enrichment claims must be dismissed. Accordingly, the Motion is granted as to Count 5.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. The Motion is granted as to Counts 3 and 5. The Motion is denied as to Counts 1, 2, and 4.

2. Counts 3 and 5 of the Class Action Complaint are **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 16th day of January, 2018.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE